# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2879
_____

Benjamin Ojogwu

*Plaintiff - Appellee*

v.

Rodenburg Law Firm

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 21, 2021
Filed: February 14, 2022
_____

Before LOKEN, WOLLMAN, and BENTON, Circuit Judges.
_____

LOKEN, Circuit Judge.

Minnesota law provides that garnishment is "an ancillary proceeding to a civil action for the recovery of money," and that a creditor may issue a garnishment summons to any third party "at any time after entry of a money judgment in the civil action." Minn. Stat. § 571.71(3). The statutes further provide that a copy of the garnishment summons, copies of other papers served on the third party garnishee, and the applicable garnishment disclosure form "must be served by mail at the last known

mailing address of the debtor not later than five days after the service is made upon the garnishee." § 571.72, subd. 4 and 5.

In this case, a judgment creditor's attorneys, Rodenburg Law Firm ("Rodenburg"), mailed consumer debtor Benjamin Ojogwu a copy of the garnishment summons Rodenburg served on garnishee US Bank, and other state-law-mandated garnishment forms, knowing that Ojogwu had retained counsel after the default judgment was entered and that he "disputes this debt." The district court, expressly disagreeing with an earlier decision of another District of Minnesota district judge,[1] held that § 571.72, subd. 4, is inconsistent with, and therefore preempted by, the following provision of the federal Fair Debt Collection Practices Act ("FDCPA"): "Without the prior consent of the consumer . . . or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt." 15 U.S.C. § 1692c(a)(2). After the parties stipulated as to remedy, the court entered final judgment awarding Ojogwu statutory damages plus attorney's and filing fees. Rodenburg appeals.

After careful study, we conclude that we may not resolve the merits of this intradistrict conflict. Rather, applying the Supreme Court's recent decisions in Spokeo, Inc. v. Robins, 578 U.S. 330 (2016), and TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2200 (2021) ("No concrete harm, no standing"), we conclude that Ojogwu lacks Article III standing to pursue this claim in federal court because he failed to allege and the record does not show that he suffered concrete injury in fact from Rodenburg's alleged violation of § 1692c(a)(2). Accordingly, we reverse the judgment in favor of Ojogwu and remand with directions to dismiss his Complaint for lack of jurisdiction.

---

[1]Resler v. Messerli & Kramer, PA, No. Civ. 02-2510, 2003 WL 193498 (D. Minn. Jan. 23, 2003).

## I. Background

Rodenburg is a debt collection law firm and a "debt collector" as defined by a 1986 amendment to the FDCPA. See 15 U.S.C. § 1692a(6); Heintz, 514 U.S. at 294-95. In March 2017, Rodenburg, representing creditor Portfolio Recovery Associates, LLC ("Portfolio"), mailed Ojogwu a Notice of Intent to Apply for Default Judgment because Ojogwu did not timely answer the January 2017 lawsuit filed by Portfolio in Hennepin County District Court to collect a $24,172.63 consumer debt Ojogwu initially owed to Citibank. On April 14, the state court entered default judgment in the amount of $36,937.35. On June 3, attorney Blake Bauer sent Rodenburg a letter referencing the state court file number and stating as relevant here:

> Please be advised that I have been retained to represent Benjamin C. Ojogwu regarding the above-referenced matter and for all matters of indebtedness. Please be further advised that my client disputes this debt and requests verification of it. Also, my client was never served with a Summons and Complaint on January 27, 2017 for the above referenced case. I would formally request a copy of the Affidavit of Service for the Summons and Complaint.
>
> Also, under no circumstances should you contact my client directly.

On June 8, Rodenburg acknowledged Bauer's letter and enclosed the following documents: (i) a Hennepin County District Court Notice of Entry and Docketing of Judgment dated January 29, 2007, giving notice that judgment in the amount of $26,518.35 had been entered in the case, Portfolio Recovery Associates v. Ojogwu, Court File No. 27-CV-07-773; (ii) a Hennepin County District Court Notice of Entry and Docketing of Judgment dated April 14, 2017, giving notice that judgment in the amount of $36,937.35 had been entered in the case, Portfolio Recovery Associates

v. Ojogwu, Court File No. 27-CV-17-5122;[2] and (iii) two affidavits of service reciting that Ojogwu was personally served with the Summons and Complaint on December 8, 2016, by handing a copy to his roommate at his usual abode, and with the Amended Complaint on January 27, 2017, by leaving it in the front door of his abode when his roommate refused to open the door and accept service.

In July 2017, Rodenburg mailed Ojogwu a letter containing copies of a garnishment summons, notice to debtor, garnishment earnings disclosure worksheet, and garnishment exemption notice that Rodenburg had served on Becho Corp as garnishee. See Minn. Stat. §§ 571.711 and .92 (relating to the garnishment of earnings). Attorney Bauer threatened an FDCPA lawsuit for this direct mailing. The dispute was resolved without litigation. On July 17, 2018, Rodenburg mailed Ojogwu copies of garnishment documents served on US Bank as a financial institution garnishee, see §§ 571.911-.914, including required disclosure and exemption notices. Ojogwu sent the documents to his lawyer. This lawsuit followed.

Ojogwu sued both Rodenburg and Portfolio under 15 U.S.C. § 1692c(a)(2) of the FDCPA. After the district court denied defendants' motion to dismiss, Portfolio settled and was dismissed. The district court then denied Rodenburg's motion for summary judgment and granted Ojogwu judgment in accordance with the parties' damage stipulation, concluding that Rodenburg's compliance with Minnesota law requiring that debtors be directly served did not excuse it from § 1692c(a)(2) liability because state garnishment and default judgment law and rules are not the "express permission of a court of competent jurisdiction," nor was the mailing an "ordinary court-related document" of the kind referred to in Heintz, 514 U.S. at 296. Thus, the

[2]Minnesota law provides that a judgment creditor, or its assignee, may enforce the judgment "at any time within ten years after the entry thereof." Minn. Stat. § 550.01. Thus, the record reflects that Ojogwu has been a judgment debtor for fifteen years, which refutes his belated claim on appeal that continuing *lawful* efforts to collect the judgment are an invasion of his legitimate privacy interests.

-4-

court concluded, the state and federal laws are in direct conflict, and Minn. Stat. § 571.72, subd. 4, is preempted by the FDCPA.

## II. The Standing Issue

"Because standing is a threshold inquiry into federal court jurisdiction, we begin -- and end -- our analysis there." Yeransian v. B. Riley FBR, Inc., 984 F.3d 633, 636 (8th Cir. 2021). Although the district court did not address the issue, "[w]e have an obligation to assure ourselves of litigants' standing under Article III." Frank v. Gaos, 139 S. Ct. 1041, 1046 (2019) (remanding for consideration of standing in light of Spokeo) (quotation omitted).

Ojogwu bears the burden of proving Article III standing by showing "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion, 141 S. Ct. at 2203. The "[f]irst and foremost" of these elements is injury in fact, which requires the plaintiff to show that the harm is both "concrete and particularized." Spokeo, 578 U.S. at 338-39 (citations omitted). "[U]nder Article III, an injury in law is not an injury in fact." TransUnion, 141 S. Ct. at 2205. Thus, a concrete and particularized inquiry is required even when Congress creates a private cause of action, as it did in the FDCPA. See § 1692k. "For standing purposes . . . an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." TransUnion, 141 S. Ct. at 2205.

Rodenburg directly mailed documents to consumer debtor Ojogwu. Thus, the alleged FDCPA violation was particularized, affecting him in a "personal and individual way." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 n.1 (1992). The issue is whether he alleged concrete harm. "A 'concrete' injury must be '*de facto*';

that is, it must actually exist." Spokeo, 578 U.S. at 340 (citation omitted). Rodenburg's alleged violation -- sending Ojogwu a copy of a garnishment summons served on US Bank -- caused Ojogwu no tangible injury, such as physical or monetary harm. The summons imposed tangible compliance obligations on the garnishee, US Bank, but serving a copy of the summons imposed no tangible *obligations* on Ojogwu. Cf. Scheffler v. Messerli & Kramer P.A., 791 F.3d 847, 849 (8th Cir.) (noting that service of a garnishment summons is not an "adverse action" under the Fair Credit Reporting Act), cert. denied, 577 U.S. 1015 (2015). Indeed, serving a copy of the third party summons is a *benefit* to the debtor, giving him timely notice and an opportunity to claim an exemption or satisfy the garnishment in a way that does not disturb his relations with the financial institution garnishee.[3] This beneficial notice is hardly evidence of tangible injury in fact.

"Article III standing requires a concrete injury even in the context of a statutory violation." TransUnion, 141 S. Ct. at 2205 (quoting Spokeo, 578 U.S. at 341). This ruling superseded our prior contrary precedents. See Braitberg v. Charter Commc'ns, Inc., 836 F.3d 925, 929-30 (8th Cir. 2016). Ojogwu alleges that Rodenburg's direct mailing violation of § 1692c(a)(2) resulted in what Spokeo and TransUnion refer to as intangible injury -- "actual damages in the form of fear of answering the telephone, nervousness, restlessness, irritability, amongst other negative emotions." Complaint

---

[3]The Supreme Court of Minnesota in construing a prior garnishment statute recognized that requiring service of a copy of the garnishment summons benefits the debtor: "There is excellent reason why [the debtor] should have an opportunity to be present and protect his property interests." Webster Mfg. Co. v. Penrod (Trolander, Garnishee), 114 N.W. 257, 258 (Minn. 1907). The FDCPA's express preemption provision, § 1692n, provides that "a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter."

¶ 31. "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." Spokeo, 578 U.S. at 340.

The historical analysis asks whether the alleged injury has "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." TransUnion, 141 S. Ct. at 2204. Congress plays an important role because, by statute, it may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." Spokeo, 578 U.S. at 341 (quotation omitted). However, Congress "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." TransUnion, 141 S. Ct. at 2205 (quotation omitted).

Applying this analysis, we conclude the intangible injuries alleged in Ojogwu's Complaint are insufficient to establish concrete injury in fact. Direct receipt of a copy of the garnishment summons did not cause Ojogwu to act to his detriment or fail to protect his interests. He promptly turned the documents over to his attorney, previously retained to represent Ojogwu "for all matters of indebtedness." This case is a far cry from Demarais v. Gurstel Chargo, P.A., on which Ojogwu relies, where the debt collector, attempting to collect a debt, violated § 1692e and § 1692f by sending the debtor discovery demands after dismissing its claim with prejudice, a false and deceptive collection action that caused the debtor to retain an attorney and incur litigation expenses. 869 F.3d 685, 693 (8th Cir. 2017). In reversing dismissal of the debtor's FDCPA claims, including claims of mental distress, we noted that the debt collector's improper collection actions bore a close relationship to "common-law unjustifiable-litigation torts." Id. 691-92. Additionally, the FDCPA violations caused the plaintiff tangible harm -- the time and money required to defend against unjustified legal action. Id. at 693.

By contrast, Ojogwu's allegations of intangible injury -- "fear of answering the telephone, nervousness, restlessness, irritability, amongst other negative emotions" --

"fall short of cognizable injury as a matter of general tort law." Buchholz v. Meyer Njus Tanick, PA, 946 F.3d 855, 864 (6th Cir. 2020). In Buchholz, the debtor alleged that misrepresentations in a lawyer's letter caused him an "undue sense of anxiety" about potential legal action. Id. at 860. The Sixth Circuit affirmed the dismissal of the § 1692e claim because the debtor failed to allege actionable concrete injury. Because the letter merely informed the plaintiff of his debts and the procedures to pay or challenge them, "[t]he cause of [his] anxiety falls squarely on Buchholz because *he* chose not to pay his debts—and now fears the consequences of his delinquency." Id. at 867, 870 (emphasis in original). Similarly, in Pennell v. Global Trust Management, LLC, 990 F.3d 1041, 1045 (7th Cir. 2021), the debtor asserted § 1692c(a)(2) and § 1692c(c) claims, alleging that a debt collector's dunning letter caused her "stress and confusion." The Seventh Circuit reversed a judgment in favor of the debtor and remanded with instructions to dismiss for lack of Article III standing. "The state of confusion is not itself an injury. Nor does stress by itself with no physical manifestations and no qualified medical diagnosis amount to a concrete harm." Id. (cleaned up).[4]

The reasoning in these cases is even more applicable here, where the direct mailing at issue served the intended purpose of *benefitting* debtor Ojogwu. As

---

[4]Most circuits to consider the issue have concluded that a consumer debtor has Article III standing to assert an FDCPA claim that a debt collector's harassing calls or letters invaded a privacy interest protected by the well-established tort of "intrusion upon seclusion." See Restatement (Second) of Torts § 652B; Lupia v. Medicredit, Inc., 8 F.4th 1184, 1191 (10th Cir. 2021); Gadelhak v. AT&T Servs., Inc., 950 F3d 458, 461-63 (7th Cir. 2020) (Barrett, J.), cert. denied, 141 S. Ct. 2552 (2021). We agree that many alleged § 1692c(a)(2) violations will satisfy the Article III requirement of concrete injury in fact; after all, the FDCPA's purpose was "to eliminate abusive debt collection practices." § 1692(e). But the concrete harm inquiry is fact specific. Directly providing a debtor with a required notice that the creditor is seeking an ancillary remedy in a long-standing debt collection action is not an invasion of the defendant's privacy.

garnishment in Minnesota is an independent action ancillary to the creditor's suit to recover money from the defendant debtor, it is not surprising that the statute requires personal service of the garnishment summons on the debtor. Moreover, to establish Article III standing, Ojogwu has the burden to demonstrate a concrete injury "*caused by* the defendant." TransUnion, 141 S. Ct. at 2203 (emphasis added). Here, Ojogwu, who had avoided paying this debt for more than ten years, made no showing that his alleged "negative emotions" were caused by Rodenburg commencing a lawful garnishment proceeding.

Finally, we think it relevant to the question of concrete injury that attorney Bauer's initial letter advised Rodenburg that Ojogwu "disputes this debt." Ojogwu's Complaint alleged a violation of § 1692c(a)(2). Section 1692c, one part of the Debt Collection Practices in Subchapter V, is entitled, "Communication in connection with debt collection." Subsection 1692c(c)(3) provides that, "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt . . . the debt collector shall not communicate further with the consumer with respect to such debt, except . . . to notify the consumer that the debt collector or creditor intends to invoke a specified remedy." The Supreme Court's relevant guidance in Heintz addressed this exception:

> [I]t would be odd if the Act empowered a debt-owing consumer to stop the "communications" inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt. But it is not necessary to read § 1692c that way . . . . Courts can read these exceptions [in §§ 1692c(c)(2), (3)], plausibly, to imply that they authorize the actual invocation of the remedy that the collector "intends to invoke." . . . [This] interpretation is consistent with the statute's apparent objective of preserving creditors' judicial remedies.

514 U.S. at 296. This comment is not obviously applicable because Ojogwu (no doubt intentionally) did not assert a violation of § 1692c(c). But bearing in mind that under Minnesota law, garnishment is an independent proceeding ancillary to "an

ordinary debt-collecting lawsuit," we think the comment reinforces our conclusion that Ojogwu failed to allege concrete injury in fact. Rodenburg Law Firm argues that the district court's narrow interpretation of the § 1692c exceptions and the FDCPA's limited express preemption provision, § 1692n, are inconsistent with Supreme Court guidance favoring FDCPA construction that is "consistent with . . . preserving creditors' judicial remedies." We leave that question for another day.

## III. Conclusion

The district court lacked Article III jurisdiction because Ojogwu failed to plausibly allege or later show a concrete injury in fact. Accordingly, the judgment of the district court is vacated and the case is remanded with instructions to dismiss the Complaint. We grant Appellant's Motion for Leave to File Supplemental Briefs on the Issue of Article III Standing.

_____