# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-3091
_____

Hannah Hekel

*Plaintiff - Appellant*

v.

Hunter Warfield, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: May 8, 2024
Filed: October 4, 2024

_____

Before COLLOTON, Chief Judge, SHEPHERD and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

Hannah Hekel claims to have been harmed by a letter she received from a debt-collection agency. Turns out, however, that she neither pleaded nor proved an injury. Although the district court ruled against her on the merits, we vacate and remand with instructions to dismiss for lack of jurisdiction.

I.

Hekel's landlord hired Hunter Warfield, Inc. to collect past-due rent. The agency's initial offer, memorialized in a letter, was to forgive the debt in exchange for payment of roughly half of what she owed. The letter, however, had several problems. Or so Hekel later alleged in her complaint.

One was including utility fees that her landlord may have had no right to collect. *See* Minn. Stat. § 504B.215, subd. 2a (requiring notice for certain utility charges); *see also* 15 U.S.C. § 1692f(1) (prohibiting a debt collector from "collecti[ng] . . . any amount" not "expressly authorized by . . . agreement . . . or permitted by law"). Another was failing to put information about how to verify and dispute the debt on the front of the letter. *See* 15 U.S.C. § 1692g(a)(3)–(5). And finally, the letter warned of "interest at the rate of 6.00%," which allegedly was too high. *See* Minn. Stat. § 549.09, subd. 1(c)(1)(i) (setting a variable interest rate for a "judgment or award of $50,000 or less"); *see also* 15 U.S.C. § 1692f(1). *But see* Minn. Stat. § 334.01, subd. 1 (setting a default 6% rate for "any legal indebtedness"). Each problem, Hekel's complaint alleged, violated the Fair Debt Collection Practices Act. *See* 15 U.S.C. §§ 1692–1692p.

The harms she allegedly suffered fell into four broad categories. The first covered procedural injuries: the violation of her federal "statutory rights" and an "informational injury" caused by the misleading statements. Next came the predictions of a future "risk of tangible harm." Others were emotional, such as "confus[ion]," "worry," and "sleeplessness." And then there were the financial effects, like "out-of-pocket costs" and the loss of "time and money." Her complaint requested both damages and attorney fees to remedy them.

The merits loomed large at the district court, which eventually granted summary judgment to Hunter Warfield on each of her claims. Although the agency mentioned standing as a "defense[]" in its answer, the court never got there.

II.

Hekel wants us to go straight to the merits too.  The problem is that "we have an independent obligation to assure ourselves of subject-matter jurisdiction," even when the parties and the district court have not addressed it.  *Webber ex rel. K.S. v. Smith*, 936 F.3d 808, 814 (8th Cir. 2019).  Standing is a "jurisdictional requirement," *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662 (2019), meaning it must exist throughout the litigation.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 422–23 (2021); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (explaining that a plaintiff must meet the requirements of standing "with the manner and degree of evidence required at the successive stages of the litigation").

Start at the beginning, with Hekel's complaint, which describes Hunter Warfield's alleged violations of her "statutory rights."  Even if we assume for the sake of argument that a violation occurred, she still lacks standing.  The Supreme Court has rejected the idea that a bare "statutory violation" is a "concrete injury." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *see Bassett v. Credit Bureau Servs., Inc.*, 60 F.4th 1132, 1136 (8th Cir. 2023) ("[T]he collectors' alleged violations of the [Act] do not alone provide standing . . . .").  A plaintiff must have "suffer[ed] [a] concrete harm" *in addition to* and "*because of* the defendant's violation of federal law." *TransUnion*, 594 U.S. at 426–27 (emphasis added).  In other words, the other categories of harms she alleges will have to "satisfy the requirement of concreteness." *Spokeo*, 578 U.S. at 341.

One that does not is a *purely* informational injury.  Again, let's suppose that Hekel did not receive all the information required by law.  She still must identify some "downstream consequence[] from failing to receive" it. *TransUnion*, 594 U.S. at 442 (citation omitted); *see also Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 338 (7th Cir. 2019) (noting that the plaintiff had "not allege[d] that she would have used the information at all").  Usually it is an "adverse effect[]" arising out of the "information deficit." *Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 935 (5th Cir. 2022); *see also Grae v. Corr. Corp. of Am.*, 57 F.4th 567, 570 (6th Cir. 2023) (listing

-3-

cases). *TransUnion* identifies an example: an "[in]ability to correct erroneous information before it [is] sent to third parties," 594 U.S. at 442, particularly when it results in the loss of a loan or some other concrete adverse effect like the denial of a housing application. *See, e.g.*, *Kelly v. RealPage Inc.*, 47 F.4th 202, 214 (3rd Cir. 2022) (turning away a prospective tenant based on an inaccurate report); *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022) (providing less favorable loan terms to an applicant due to erroneous credit reports). Otherwise, a plaintiff is complaining about an abstract violation lacking an actual impact. *See Tritchell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020); *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 12 (2023) (Thomas, J., concurring) ("To put it in 'more pedestrian terms' . . . standing asks, [']What's it to you?[']".). Just like Hekel is here.

Just as abstract is a "risk of tangible harm." The complaint never says what the risk is, much less whether it is "imminent or substantial." *TransUnion*, 594 U.S. at 435 (noting that a person may only pursue relief "*so long as* the risk of harm is sufficiently imminent and substantial" (emphasis added)); *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (explaining that "[a]llegations of *possible* future injury are not sufficient" (citations omitted)). Nor can the risk of future harm support a backwards-looking claim for damages. *See TransUnion*, 594 U.S. at 436. When the remedy is retrospective, the threat must have either "materialize[d]" into the anticipated harm or caused "a *separate* concrete harm." *Id.* at 436–37. And unfortunately for Hekel, her cryptic allegation about an "increased risk of harm" is neither imminent nor concrete enough to count.

Alleging emotional injuries like "confus[ion]," "worry," and "sleeplessness" gets closer, but still "fall[s] short." *Ojogwu v. Rodenburg Law Firm*, 26 F.4th 457, 463 (8th Cir. 2022). The Supreme Court has not taken a "position on whether . . . an emotional or psychological harm . . . suffice[s] for Article III purposes," *TransUnion*, 594 U.S. at 436 n.7, but we have spoken on the issue. In *Ojogwu v. Rodenburg Law Firm*, we concluded that being in a "state of confusion is not itself an injury," and "nervousness, restlessness, irritability, amongst other negative

-4-

emotions" are not either. 26 F.4th at 463 (first quoting *Pennell v. Glob. Tr. Mgmt., LLC*, 900 F.3d 1041, 1045 (7th Cir. 2021) and then quoting *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 864 (6th Cir. 2020)). Hekel's complaint substitutes some words—"sleeplessness" for "restlessness" and "worry" for "nervousness"—but the "negative emotions" they describe are basically the same. *Id.* at 463. And under *Ojogwu*, none gives rise to standing. *Id.*; *see also Liberty Mut. Ins. Co. v. Elgin Warehouse & Equip.*, 4 F.3d 567, 571 (8th Cir. 1993) ("In this circuit[,] only an en banc court may overrule a panel decision . . . .").

Moreover, even if emotional injuries counted, *see Bassett*, 60 F.4th at 1136 n.2 (suggesting that the "[i]nfliction of emotional distress" might), Hekel's conclusory allegations would not. They are "naked assertion[s]" of emotional harm, "devoid of further factual enhancement." *Auer v. Trans Union, LLC*, 902 F.3d 873, 878 (8th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Without supporting facts, they are just labels that "fall[] short of plausibly establishing injury." *Id.*; *see Miller v. Redwood Toxicology Lab'y*, 688 F.3d 928, 934 n.5 (8th Cir. 2012) (deeming it "necessary to include some well-pleaded factual allegations" to demonstrate an injury in fact (citation omitted)).

Hekel's only remaining injuries, "out-of-pocket costs" and lost "time and money," are just as conclusory. Monetary harms "readily qualify as concrete injuries," *TransUnion*, 594 U.S. at 425, but the complaint tells us nothing about "*how* the defendant's actions" financially harmed her. *McNaught v. Nolen*, 76 F.4th 764, 772 (8th Cir. 2023). She never alleges, for example, that she "paid any part of the interest or principal." *Bassett*, 60 F.4th at 1136–37 (suggesting that the lack of payments signaled that the plaintiff had not "suffer[ed] a concrete injury"); *see also Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022) (noting that the plaintiff had not "ma[de] a payment, promise[d] to do so, or [otherwise] act[ed] to her detriment"). Nor does she identify any *specific* "out-of-pocket" expenses that

-5-

Hunter Warfield's letter caused her to incur.[1]  The point is that boilerplate, "[b]reezy declarations" of financial harm like those in Hekel's complaint "fall well short of establishing the concrete and particularized injury required for standing." *McNaught*, 76 F.4th at 772 (citation omitted).

## III.

Hekel had opportunities to provide more information.  She eventually moved for partial summary judgment on her claim that the 6% interest rate listed in the letter was too high under Minnesota law.  At that point, she needed to "set forth[,] by affidavit or other evidence[,] specific facts" supporting an injury in fact. *Lujan*, 504 U.S. at 561; *see also* Fed. R. Civ. P. 56(c)(1)(A) (requiring a moving party to "cit[e] to particular parts of . . . the record").  Her evidence, just like her complaint, never established one.

Her motion papers did not include much supporting documentation, just copies of her lease and the collection letter.  Although they were relevant to establishing her Fair Debt Collection Practices Act claims, they did not identify an injury.  Missing were receipts, bank statements, doctor's notes, or affidavits, *something* showing how she was injured.  Without an injury in fact, there can be no standing.  And without standing, there can be no grant of summary judgment. *See Young Am.'s Found. v. Kaler*, 14 F.4th 879, 891 (8th Cir. 2021) (vacating a "grant of summary judgment" because the plaintiffs "lack[ed] standing" to sue); *see also*

---

[1]Even if *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685 (8th Cir. 2017) survived *TransUnion*, it is distinguishable. *See Ojogwu*, 26 F.4th at 462 (explaining that the Supreme Court's "ruling superseded our prior contrary precedents").  There, a debt collector "sen[t] the debtor discovery demands after dismissing its [state-court] claim with prejudice, . . . [which] caused [him] to retain an attorney and incur litigation expenses . . . to defend [himself] against [the] unjustified legal action." *Id.* at 463 (explaining *Demarais*, 869 F.3d at 693).  Hekel, by contrast, does not allege that Hunter Warfield's letter prompted her to take any action at all, much less incur specific litigation-related expenses.

Fed. R. Civ. P. 12(h)(3) (requiring "dismiss[al] [of an] action" if the court "determines at any time that it lacks subject-matter jurisdiction").

IV.

We accordingly vacate the district court's judgment and remand with instructions to dismiss the case.

_____