# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3387

_____

Robert J. Gallagher

*Plaintiff - Appellant*

v.

Santander Consumer USA, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 25, 2024
Filed: January 13, 2025

_____

Before SMITH, ERICKSON, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

Can a lender keep a car title for 15 days after a borrower pays off the loan? Robert Gallagher wants to find out on behalf of a potential class of Missouri consumers. Only he has failed to identify an injury-in-fact, so we vacate the grant of summary judgment and instruct the district court to remand the case to state court.

I.

Gallagher borrowed money from Santander Consumer USA to buy a car. When the time came to pay off the loan, he made the final payment by electronic-funds transfer. Based on its standard practice, Santander waited 15 days before it sent the title.

Under Missouri law, a "lienholder *shall* release [its] lien" within "five business days" after it "receives payment in full," including "by way of electronic funds transfer," or "pay . . . liquidated damages." Mo. Rev. Stat. § 301.640.1, .4 (emphasis added). Hoping to recover them on behalf of a class of borrowers affected by Santander's 15-day policy, Gallagher sued in Missouri state court. *See id.* § 507.070.

Removal of the case to federal court ended in summary judgment for Santander. Gallagher wants us to reverse, but we told the parties to be ready to discuss whether this case belongs in federal court at all.

II.

The reason is simple: "we have an independent obligation to assure ourselves of subject-matter jurisdiction." *Hekel v. Hunter Warfield, Inc.*, 118 F.4th 938, 941 (8th Cir. 2024) (citation omitted). What is potentially absent is "standing," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 & n.6 (2016) (identifying the requirements and observing that they apply to a class representative), something that Santander had "the burden of establishing" as the one who "invok[ed] federal jurisdiction," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020) (observing that, when "a case is removed from state court . . . the defendant, as the proponent of federal jurisdiction, must establish the plaintiff's Article III standing" (emphasis omitted)). Both parties believe it exists and want us to go straight to the merits. If they are wrong, the case is headed back to state court. *See Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025,

1033 (8th Cir. 2014); *see also* 28 U.S.C. § 1447(c) (stating that in removal cases, "[i]f *at any time* before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" (emphasis added)).

The missing ingredient here is an injury-in-fact, "an invasion of a legally protected interest that is concrete . . . and actual[,] . . . not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (citation omitted). Although Gallagher claims that the violation of a statute is all he needed, a "bare 'statutory violation'" is not enough. *Hekel*, 118 F.4th at 942 (quoting *Spokeo*, 578 U.S. at 341). As we have explained, there must be some "concrete harm *in addition to* and '*because of*'" it. *Id.* (quoting *TransUnion v. Ramirez*, 594 U.S. 413, 426–27 (2021)). In other words, the delay must have caused an injury that itself "satisf[ies] the requirement of concreteness." *Id.* (quoting *Spokeo*, 578 U.S. at 341).

"Central to assessing concreteness is whether the asserted harm has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms." *TransUnion*, 594 U.S. at 417 (citation omitted). Gallagher has not identified a monetary harm, like a failed effort to sell the car or to use it as collateral while Santander retained the title. *See Lloyd v. FedLoan Servicing*, 105 F.4th 1020, 1028 (8th Cir. 2024) (noting that "denial of credit can give rise to an actual claim for damage"); *see also Connecticut v. Doehr*, 501 U.S. 1, 11 (1991) (observing that a clouded title can "significant[ly]" affect "property interests," including by "impair[ing] the ability to sell . . . the property" or "reduc[ing] the chance of obtaining a . . . loan or additional mortgage"); *Bassett v. Credit Bureau Servs., Inc.*, 60 F.4th 1132, 1136 (8th Cir. 2023) (explaining that making payments in response to an allegedly unlawful debt-collection letter is a "tangible harm," but just "receiv[ing] the letter" is not). Nor is there evidence that the delay affected his credit rating. *Cf. TransUnion*, 594 U.S. at 432 (holding that "the publication to a third party of a credit report bearing a misleading . . . alert injure[d] the subject of the report").

The only possible harm on this record is intangible: his title was clouded for longer than it should have been. The question for us is whether this type of harm has "a close historical or common-law analogue" that can satisfy the concreteness requirement. *Id.* at 424. Gallagher identifies two possibilities, but neither one works.

A.

The first invokes the traditional "jurisdiction of courts of equity to remove clouds from title." *Simmons Creek Coal Co. v. Doran*, 142 U.S. 417, 449 (1892). If courts could hear those cases, then the existence of a cloud alone must have "traditionally . . . provid[ed] a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 417.

The remedy in those cases, however, was purely prospective: an injunction ordering the cloud removed. *See, e.g.*, *Hopkins v. Walker*, 244 U.S. 486, 490 (1917). Gallagher, by contrast, seeks damages for past conduct, which makes sense given that Santander had already delivered clean title by the time he sued. There was nothing left for prospective relief to fix.

The mismatch matters because standing depends on the "form of relief" requested. *TransUnion*, 594 U.S. at 431. The fact that there may be an analogue supporting "standing to seek injunctive relief does not necessarily mean that [Gallagher] has standing to seek retrospective damages." *Id.* at 436; *cf. Murthy v. Missouri*, 603 U.S. 43, 59 (2024) (observing that whether "injuries are relevant" depends on whether the plaintiff seeks "compensatory" or "forward-looking relief").

Clouded-title cases do not work as an analogy for another reason. The injury is the cloud itself, the *ongoing* interference with a property owner's rights. *See Ward v. Chamberlain*, 67 U.S. 430, 445 (1862) (observing that "equity will interfere" if "an [unfounded or void] instrument is outstanding"). Yet in this case, there has been no showing that Santander's delay has caused any ongoing injury to Gallagher's

rights, nor that he feared it would.[1]  The analogy, in other words, gets the parties no closer to one "traditionally recognized" as providing damages.  *TransUnion*, 594 U.S. at 417.

B.

Neither does slander of title, but for a different reason.  Although it remedies past harm, the similarities largely end there.

An "unusual tort," *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 469 (1993) (Kennedy, J., concurring in part and concurring in the judgment), slander of title remedies "pecuniary loss or injury" due to publication of a false statement that casts doubt on the ownership of property, *Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1048 (8th Cir. 2022) (citation omitted).  Uncommon as it may be, it has long "provid[ed] a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 417; *see, e.g.*, *Surgett v. Lapice*, 49 U.S. 48, 52 (1850); *M'Cluny v. Silliman*, 28 U.S. 270, 271 (1830); *Like v. McKinstry*, 41 Barb. 186, 188 (N.Y. Gen. Term 1863); *see also TXO Prod. Corp. v. All. Res. Corp.*, 419 S.E.2d 870, 878 (W. Va. 1992) (observing that "slander of title long has been recognized as a common law cause of action," dating back at least to the time of Queen Elizabeth I, circa 1591).  The only question is whether the injury underlying Gallagher's tardy-title claim resembles one in a slander-of-title case. *See TransUnion*, 594 U.S. at 417.

It turns out it does not.  Missing is the pecuniary harm that must flow from the publication of the false statement. *See Landstrom v. Thorpe*, 189 F.2d 46, 51 (8th

---

[1]The analogy might have worked if "exposure to" the extended cloud had caused Gallagher some "independent[]" concrete harm at the time. *TransUnion*, 594 U.S. at 437–38 (recognizing that standing for a damages claim may exist when a past injury resulted from "the mere risk" of a possible future injury); *see Clemens v. ExecuPharm, Inc.*, 48 F.4th 146, 156 (3d Cir. 2022) (holding that a risk of future harm "can satisfy concreteness" in a suit for damages if "additional, currently felt concrete harms" flowed from it).  Nothing like that, however, exists here.

Cir. 1951) (recognizing that an action for slander of title "is not one for words spoken, but . . . for special damages for the losses sustained by reason of the speaking and publication of the slander" (citation omitted)); *Bentley v. Reynolds*, 26 S.C.L. (1 McMul.) 16, 19–20 (1840) (holding that "words *occasioning actual damage[]* are actionable" in a slander-of-title action (emphasis added)). Examples include accumulating extra interest due to a belief that the loan still exists, *see Fountain v. Mojo*, 687 P.2d 496, 501 (Colo. App. 1984); losing out on a sale because a credit check showed a continuing lien on the car, *see Greenlake Inv. Co. v. Swarthout*, 161 S.W.2d 697, 699 (Mo. Ct. App. 1942); *Like*, 41 Barb. at 193; and incurring attorney fees to clear the title, *see Lau v. Pugh*, 299 S.W.3d 740, 750 (Mo. Ct. App. 2009). Gallagher does not even try to identify a monetary harm, much less one that resembles any of those.

Without a financial injury, this case starts to look a lot like *TransUnion*. There, just like here, "the mere presence of an inaccuracy . . . cause[d] no concrete harm." *TransUnion*, 594 U.S. at 434. Santander's practice of holding on to the title for an extra 10 days may be frustrating, and it may even violate Missouri law, but it does not automatically result in an Article III injury. *See id.* at 442 ("No concrete harm, no standing."); *Spokeo*, 578 U.S. at 342 (noting that "not all inaccuracies cause harm").

III.

We accordingly vacate the district court's judgment with instructions to remand the case to state court.

_____