823 F.2d 253
 44 Fair Empl.Prac.Cas. 495,
43 Empl. Prac. Dec. P 37,205,
45 Empl. Prac. Dec. P 37,657
Lorenzo WILSON, Appellant,
v.
Bud MYERS, Local 858, U.A.W.; Local 858 U.A.W. Union
Membership and Officers of Local 858; and the International
Union United Auto Aerospace Agricultural Implement Workers
of America (U.A.W.), Appellees.
 No. 86-1667.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 18, 1986.
Decided July 14, 1987.
Rehearing Denied Oct. 15, 1987.
 
 Greg A. Egbers, Davenport, Iowa, for appellant.
 Michael Erp, Chicago, Ill., for appellees.
 Before McMILLIAN, BOWMAN and WOLLMAN, Circuit Judges.
 McMILLIAN, Circuit Judge.
 
 
 1
 Lorenzo Wilson appeals from a final judgment entered in the United States District Court for the Southern District of Iowa granting summary judgment in favor of Bud Myers, U.A.W. Local 858, the members and officers of Local 858, and the International Union, United Auto Aerospace Agricultural Implement Workers of America (collectively referred to as the Union). Wilson brought an action under 42 U.S.C. Sec. 2000e-2(c)(1)[1] (Title VII), alleging that Bud Myers, as president of Local 858, and other union members, with the Union's acquiescence, discriminated against him because of his race. For reversal, Wilson argues that the district court erred in granting summary judgment because there existed a genuine issue of material fact. For the reasons discussed below, we reverse and remand.
 
 
 2
 Wilson, a black man, began working for J.I. Case Co. in Bettendorf, Iowa, in 1976, and continued until March 12, 1982. Wilson was a member of the Union during his employment at J.I. Case Co.
 
 
 3
 Myers was president of Local 858 in 1981; the date he left office is disputed. The Union alleges that Myers was defeated for office in May 1981 and did not act as president after May 1981. Wilson alleges that Myers was still acting as president in December 1981.
 
 
 4
 On December 1, 1981, Wilson found an inflammatory, racially-derogatory flyer (referred to as the "hunting letter") in his time card slot at the plant. Wilson alleges that Myers had photocopied the flyer at the union hall and had circulated it among white employees and white union members. Wilson complained to the Union about the flyer and other racial incidents; he alleges that the Union did nothing to correct the situation. In May 1982, Wilson filed a charge with the Iowa Civil Rights Commission and received a right-to-sue letter on January 26, 1983. Approximately four months later, he filed a pro se complaint in federal district court, alleging that Myers, as president of the Union, and other union members had discriminated against him on the basis of his race.
 
 
 5
 Wilson subsequently obtained counsel and, in November 1983, filed an amended complaint, alleging violation of Title VII, 42 U.S.C. Sec. 1985(3) (conspiracy to deny civil rights); and the Labor Management Reporting and Disclosure Act, 29 U.S.C. Sec. 411.[2] The district court permitted Wilson to file a second amended complaint after the court determined, in response to the Union's motion to dismiss, that the complaint was insufficient. Wilson v. UAW Local 858, No. 83-48-D-2, slip op. at 1-2 (S.D. Iowa May 3, 1984). The Union again moved to dismiss Wilson's amended complaint. The district court granted the motion to dismiss the Sec. 1985 claim and the 29 U.S.C. Sec. 411 claim. Wilson v. UAW Local 858, No. 83-48-D-2, slip op. at 1-2 (S.D. Iowa, Oct. 29, 1984). The district court concluded that Wilson had failed to state a claim under 29 U.S.C. Sec. 411 because he failed to show how the alleged actions by the Union denied his right to participate in union activities and failed to allege the elements of a conspiracy under Sec. 1985(3). Id. at 2. The district court, however, denied the Union's motion to dismiss the Title VII claim.
 
 
 6
 On February 19, 1985, the Union filed a motion for summary judgment on the Title VII claim. Neal Wolbers, president of Local 858, stated in an affidavit in support of the motion that Myers "held no Union office and was not authorized to take any action whatsoever on behalf of Local 858." The Union argued that it could not be held liable under Title VII for the unauthorized actions of a rank and file member of the Union.
 
 
 7
 On April 8, 1985, the district court denied the motion for summary judgment. Wilson v. UAW Local 858, No. 83-48-D-2, slip op. at 2 (S.D. Iowa Apr. 8, 1985). The court considered the affidavit of Neal Wolbers, who stated that he had been president of the Union on December 1, 1981, and the affidavit of Wilson, who stated that Wolbers did not act as president until January 1982 at the earliest. The district court concluded that an issue of material fact existed as to whether Myers was authorized to act as an agent for Local 858, and thus denied the motion for summary judgment on that ground. Id. at 2.
 
 
 8
 On October 22, 1985, the Union again moved for summary judgment. On November 27, 1985, prior to responding to the Union's motion for summary judgment, Wilson's counsel filed a motion for leave to withdraw. He stated that he had spent considerable time and effort on the case but Wilson had no grounds, "other than suspicions," on which to resist the motion for summary judgment. The district court granted the motion for leave to withdraw. On February 20, 1986, the district court granted Wilson's motion for appointment of counsel.
 
 
 9
 With the assistance of newly-appointed counsel, Wilson filed a resistance to the motion for summary judgment on March 4, 1985. He alleged that there were disputed issues of material fact as to (1) whether Myers was president of Local 858 on December 1, 1981, and (2) whether Myers placed the "hunting letter" in his time card slot. Wilson submitted his affidavit and the affidavits of Donnie Pearson and Vernon Bunner, who were fellow employees and members of the Union. Pearson stated that on December 4, 1981, he consulted Myers about being laid off because he believed Myers was president of Local 858. Bunner stated that in December 1981 he saw Myers with the "hunting letter" and also saw Myers show the letter to other employees in the plant cafeteria. Bunner also alleged that he had attempted to secure the Union records, which would establish that Myers was the president, but had been denied access to these records. Wilson stated that he believed Myers had placed the flyer in his time card slot and that Myers was acting president of Local 858 in December 1981.
 
 
 10
 On April 28, 1986, the district court granted summary judgment in favor of the Union. Wilson v. Myers, No. 83-48-D-2, slip op. at 2. (S.D. Iowa Apr. 28, 1986). The district court noted that Wilson had not filed a separate statement of disputed facts, as required by Local Rule 2.27. The district court, therefore, held that the facts set forth by the Union were deemed to be admitted by Wilson. The court found the affidavits of Wilson and the other two employees were nothing more than statements of opinions that Myers was president of the Union. The court concluded that there was no genuine issue of fact concerning Myers' status; he was a rank and file member of the Union at the time of the alleged discriminatory act. The district court thus held the Union could not be held responsible for Myers' unauthorized acts. Id. at 2. The district court also granted summary judgment in favor of Myers, although Myers had not joined in the motion for summary judgment. The court determined that Myers was not acting as a representative of the Union and thus Wilson could state no claim against him under Title VII. Id.
 
 
 11
 On May 19, 1986, Wilson filed a pro se notice of appeal. On May 22, 1986, Wilson's appointed counsel filed an application for leave to withdraw on the ground that he could not certify that an appeal would be well grounded and warranted by existing law, as required by Fed.R.Civ.P. 11. The district court granted the request for leave to withdraw. Wilson, proceeding pro se, filed an appellate brief on July 10, 1986. On July 8, 1986, this court, on its own motion, appointed counsel to represent Wilson on appeal. The appeal was submitted on the briefs.
 
 
 12
 The sole issue on appeal is the propriety of the district court's grant of summary judgment. A district court should grant summary judgment only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Brown v. Trans World Airlines, Inc., 746 F.2d 1354, 1358-59 (8th Cir.1984). We hold that the district court erred in granting summary judgment in this case because there existed a genuine issue of material fact concerning Myers' status in the Union in December 1981. The parties presented conflicting evidence concerning Myers' status. Wolbers, president of Local 858, stated that Myers was not the president in December 1981. However, Wilson and two other employees stated that Myers was still acting as president in December 1981. In an affidavit filed in March 1985 Wilson alleged that he "personally knew that Neal Wolbers never acted as president until January 1982 at the earliest." Wilson also stated that he had personally observed Myers doing Union work, including "representing a union member in a meeting with the plant manager during the Christmas shut-down of 1981."
 
 
 13
 The district court improperly resolved this issue on the basis of the affidavits. Summary judgment is not a substitute for the trial of disputed fact issues. In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 538 F.2d 180, 184 (8th Cir.1976), cert. denied, 42 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977). Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact. Weightwatchers of Quebec, Ltd. v. Weightwatchers International, Inc., 398 F.Supp. 1047 (E.D.N.Y.1975). The trial court errs when it takes upon itself, in deciding a summary judgment motion, to weigh conflicting evidence and to resolve the issue based on the evidence. Rosenthal v. Rizzo, 555 F.2d 390, 393 (3d Cir.), cert. denied, 434 U.S. 892, 98 S.Ct. 268, 54 L.Ed.2d 178 (1977).
 
 
 14
 Because this case is being remanded for further proceedings, we make the following additional comments. The Union and the district court focused entirely on the Union's potential liability as a result of Myers' actions as an agent of the Union. However, Wilson's claim, however, is not limited to this theory of liability. Wilson alleges in his second amended complaint that the Union failed to investigate his complaints of racial incidents directed against him and refused to take any actions to prevent such racial abuse. The district court should consider any evidence submitted in support of this theory and determine if the Union is liable for condoning racial discrimination against Wilson. See Goodman v. Lukens Steel Co., --- U.S. ----, ----, 107 S.Ct. 2617, 2622-25, 96 L.ED.2d 572 (1987) (Union's failure to investigate or file grievances for racial harassment and racial discrimination violates Title VII); Walker v. Ford Motor Co., 684 F.2d 1355, 1358-59 (11th Cir.1982) (employer's action condoning racially hostile workplace created by plaintiff's co-workers violated Title VII).
 
 
 15
 Accordingly, the judgment of the district court is reversed and this case is remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 42 U.S.C. Sec. 2000e-2(c)(1) provides: "It shall be an unlawful employment practice for a labor organization--(1) to exclude or to expel from its membership or otherwise to discriminate against, any individual because of his [or her] race, color, religion, sex, or national origin...."
 
 
 [2]
 29 U.S.C. Sec. 411 provides a Bill of Rights for members of labor organizations. Section 411(a)(1) provides:
 Every member of a labor organization shall have equal rights and privileges ... to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organizations' Constitution and Bylaws.