**Paul E. CARROLL, Appellant,**

v.

**GULF INSURANCE CO., Appellee.**

**No. 88-5419.**

United States Court of Appeals, Eighth Circuit.

Submitted May 8, 1989.

Decided Oct. 10, 1989.

Wm. Jason Groves, Rapid City, S.D., for appellant.

Patricia A. Meyers, Rapid City, S.D., for appellee.

Before ARNOLD, FAGG, and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Paul E. Carroll (Carroll) appeals from the judgment of the District Court granting summary judgment in favor of Gulf Insurance Company (Gulf). We reverse and remand.

Carroll injured his wrist while working for Magnetic Peripherals Incorporated in Rapid City, South Dakota, on May 21, 1986. On May 27, Carroll told his supervisor that the pain in his wrist prevented him from performing his job and a first Report of Injury was made by the employer. The next morning the employer sent Carroll to the company doctor, Dr. Waltman. Dr. Waltman diagnosed Carroll's condition as tendonitis and referred Carroll to Dr. Anderson, an orthopedic surgeon, for further evaluation and treatment.

Dr. Anderson's examination found signs of tendonitis and x-rays taken showed cystic changes of the scaphoid bone. Dr. Anderson diagnosed DeQuervain's tenosynovitis. During July, August, and September 1986, Dr. Anderson saw Carroll on a

number of occasions and a bone scan and CT-scan were performed to evaluate the cystic changes. Carroll's symptoms persisted and surgery was scheduled on September 17. Dr. Anderson's office notes of that date stated: "I believe he should undergo surgery because of his cystic pain and discomfort, exploration of this area and examination of the scaphoid bone." Joint Appendix at 20. Gulf advised Carroll that it would not pay for the surgery since it appeared to be related to Carroll's cystic problem and not a work-related injury. The surgery was canceled.

When Dr. Anderson learned Gulf was questioning the necessity and work relation of the proposed surgery, he stated in his office notes of September 29:

> [Carroll's] surgery was delayed today because his insurance company is contesting the cause of his pain. He has been tried on a variety of treatment programs and has made very little response. I believe he has evidence of tendonitis in the wrist over the first extensor tendon compartment and base of the thumb. This is the main reason for surgery and while I was doing the surgery, I wanted to inspect the scaphoid bone to determine if there was a fracture noted in the distal pole. I do not believe his surgery should be denied because of "cysts". His primary problem appears to be inflammatory tendonitis with use of the wrist and hand. Therefore, release of these tendon compartments are still indicated as a work related injury.

*Id.* at 21.

On October 23, Tony Miller, Gulf's adjuster, sent the treatment notes of Dr. Anderson through September 17 to Dr. Jetzer for evaluation of Carroll's claim. Dr. Jetzer responded on November 11 and advised Miller that, in his opinion, Gulf ought to "divide this responsibility in terms of anything involving the cyst in the scaphoid bone being nonwork related and the tendonitis being work related." *Id.* at 24.

Though Miller had Dr. Anderson's treatment note of September 29, stating that the primary problem was tendonitis, and Dr. Jetzer's letter of November 11, stating that the tendonitis was work related, he sent a letter to Carroll on November 20, 1986, which seemed to deny Carroll all insurance coverage. The letter read:

> This is in regard to your claim that was presented on an injury that happened on 5/27/86. After reviewing the information presented for the injury as well as the medical that has been presented to us, we do not find this to be a compensable injury as defined under the provisions of Workers' Compensation Statutes for the State of South Dakota.
>
> Therefore, this will not be considered a Workers' Compensation injury. Therefore, there is no coverage available for such.

*Id.* at 26. Copies of Gulf's denial of coverage were sent to the South Dakota Department of Labor and the employer.

In March 1987, Carroll contacted attorney Dennis Finch. Finch wrote to Gulf on March 23, 1987, enclosing Dr. Anderson's records and demanding that the matter be treated as compensable. In May 1987, Gulf referred the file to its defense attorney, Thomas Fritz. Fritz communicated by letter with Carroll's attorney on May 22, 1987, and stated that Gulf's position continued to be one of a denial of coverage as stated in Miller's letter of November 20, 1986.

On August 17, 1987, Dr. Waltman wrote Gulf objecting to the denial of Carroll's claim and demanding payment of Waltman's outstanding bills. He stated:

> I would like to strongly protest this decision as this patient suffered from DeQuervam's [sic] Tenosynovitis which is directly related to the repetative [sic] work that he was doing for MPI. During his visits with our office we did do tests to rule out other possible causes for his pain and these turned out negative. I feel that there is no question at all that this is Tenosynovitis and that his visits to us were directly related to his repetative [sic] work that he does at MPI.
>
> Enclosed is [sic] our unpaid billings and we expect payment on these through workman's compensation.

*Id.* at 34. Dr. Waltman was not paid.

Gulf's attorney then wrote to Finch on September 16, 1987, and proposed negotia-

tion by stating that if Carroll's sole injury was tendonitis the claim could be concluded. According to Carroll, and the record seems to support his position, this was the first time Gulf indicated that it considered Carroll's tendonitis compensable.

This litigation, alleging that Gulf's refusal to pay Carroll's outstanding medical bills and to authorize payment for the proposed surgery amounted to a bad faith denial of a valid claim, was filed on September 25, 1987. On September 1, 1988, the District Court granted the defendant Gulf's motion for summary judgment. It is from this judgment that Carroll appeals.

## I.

■ We have previously interpreted the relevant South Dakota worker's compensation statutes as implicitly recognizing that a separate cause of action in tort can arise out of a bad faith failure by an insurance company to pay a valid claim. *Simkins v. Great West Casualty Co.*, 831 F.2d 792, 793 (8th Cir.1987); *Hollman v. Liberty Mut. Ins. Co.*, 712 F.2d 1259, 1261 (8th Cir.1983). This interpretation was endorsed by the South Dakota Supreme Court. *In re Certification of a Question of law (Champion v. United States Fidelity & Guar. Co.)*, 399 N.W.2d 320, 323 (S.D.1987). In order to prevail in a bad faith action the plaintiff must demonstrate "the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 690–691, 271 N.W.2d 368, 376 (1978); *accord Champion*, 399 N.W.2d at 324. An insurance company will be held liable only when it intentionally denies a claim without a reasonable basis. *Simkins*, 831 F.2d at 793.

■ The sole issue on appeal is the propriety of the District Court's grant of summary judgment in favor of Gulf. "In reviewing a decision of a district court to grant summary judgment we must apply the same strict standard as the district court." *Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir.1989). Summary judg-

ment should be granted "only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Wilson v. Myers*, 823 F.2d 253, 256 (8th Cir.1987). "We are required to view all evidence in the light most favorable to the non-moving party and to 'give that party the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in pleadings ... filed in the suit.' " *Robinson*, 864 F.2d at 624 (quoting *Trnka v. Elanco Prods. Co.*, 709 F.2d 1223, 1225 (8th Cir.1983)). We hold that the District Court erred in granting summary judgment because there existed genuine issues of material fact concerning whether Gulf acted in bad faith in denying Carroll's claim.

There are a number of factual disputes in the record. Gulf claims that it paid all of Carroll's medical bills as they were incurred up until September 17, 1986, when the surgery was scheduled. However, Dr. Waltman's letter of August 1987, demanding payment for outstanding medical bills, contradicts this position. Gulf does not deny that Dr. Waltman treated Carroll solely for his compensable tendonitis condition. Even more significant is the disagreement in the record relating to the medical purpose for the proposed surgery on Carroll's wrist. Dr. Anderson's treatment note of September 29 stated that the principal reason he wanted to perform surgery was to cure the tendonitis and not to treat the cystic condition, as he had implied in his notes of September 17. This subsequent statement could be viewed as a contradiction of his previous one, made in an attempt to secure undeserved insurance coverage for his patient. Alternatively, it could be found to be merely a more detailed and thoughtful explanation of Dr. Anderson's earlier cryptic notes justifying the surgical procedure.

In granting Gulf's motion for summary judgment the District Court appears to have made a number of factual findings. The court determined that all Carroll's medical expenses concerning the treatment of tendonitis were paid by Gulf as they were incurred despite the doubt cast upon

**1074**

this claim by Dr. Waltman's letter. The court gives no weight to Dr. Anderson's assertion that he wanted to perform the surgery in order to treat tendonitis, thereby implying that the later explanation was merely a self-serving one made in order to receive payment from Gulf. Summary judgment, however, is not a substitute for the trial of disputed fact issues. *Wilson,* 823 F.2d at 256. The trial court errs when, in deciding a summary judgment motion, it takes it upon itself to weigh conflicting evidence and to resolve the issue based on the evidence. *Id.*

Even more damaging to Gulf's position is the November 20, 1986, letter from Miller to Carroll. The letter appears to be a complete denial of all insurance coverage. The letter does not contain an explanation of Gulf's position that the tendonitis condition was work-related and compensable while the cystic condition was not. Gulf never contacted Dr. Anderson to request that he divide his bills along these lines. There is evidence in the record that suggests that Carroll was not told that Gulf considered the tendonitis compensable until a full year later when Gulf's attorney offered to negotiate with Carroll's counsel.

Gulf claims that it reasonably believed that all remaining medical bills were for a non-compensable injury and therefore its denial of coverage was not in bad faith. This determination of reasonableness, however, which in this case turns largely on the resolution of disputed factual issues, is particularly inappropriate for summary judgment. Summary judgment is designed to eliminate those claims with no basis in material fact, not to reject those claims that are merely dubious. *Id.*

We find that genuine issues of material fact exist regarding whether Gulf acted in bad faith in denying Carroll's claim and, therefore, that summary judgment was improperly granted. Accordingly, the judgment of the District Court is reversed and the case is remanded for further proceedings.