# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 22-2840

———————————————

Chiya C. Lloyd

*Plaintiff - Appellant*

v.

FedLoan Servicing

*Defendant - Appellee*

Equifax Information Services LLC; Trans Union, LLC

*Defendant*s

Experian Information Solutions, Inc.

*Defendant - Appellee*

————————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

————————

Submitted: September 21, 2023
Filed: June 21, 2024

————————

Before SMITH, Chief Judge,[1] MELLOY and ERICKSON, Circuit Judges.

————————

---

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024.  See 28 U.S.C. § 45(a)(3)(A).

ERICKSON, Circuit Judge.

Chiya Lloyd filed her initial complaint pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq., against FedLoan Servicing LLC[2] ("FedLoan"), Equifax Information Services, LLC ("Equifax"), Trans Union, LLC ("Trans Union"), and Experian Information Solutions, Inc. ("Experian"). Equifax and Trans Union settled with Lloyd and were dismissed from the case; after their dismissal, Lloyd filed an amended complaint asserting FCRA violations against FedLoan and Experian. The district court[3] granted a motion for summary judgment in favor of Experian, and, later, one in favor of FedLoan. We affirm.

## I.      BACKGROUND

FedLoan services at least nine federal student loans for Lloyd.  As a servicer, FedLoan furnishes information to Experian regarding Lloyd's student loan payment history.  In turn, Experian, a consumer reporting agency ("CRA"), regularly issues consumer reports pursuant to the FCRA.

In August 2019, FedLoan submitted three pieces of information to Experian: (1) Lloyd's nine student loan payments from January 2018 were overdue, (2) Lloyd's nine student loan payments from February 2018 were overdue, and (3) seven of Lloyd's student loan payments from June 2019 were overdue.  In early September 2019, Lloyd submitted an online dispute[4] with Experian contesting all the reported delinquencies.  To describe her dispute, Lloyd entered a narrative that read: "Any and all late remarks are factually inaccurate.  See proof provided."  In support, she

_____

[2]FedLoan Servicing LLC is the trade name of the Pennsylvania Higher Education Assistance Agency, which services student loan accounts on behalf of the United States Department of Education.

[3] The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

[4]Lloyd filed two identical disputes a few days apart in the beginning of September, which were addressed as one.

attached screenshots of her transaction history from FedLoan as of August 16, 2019, and an administrative forbearance letter from FedLoan dated August 2, 2019.

After receiving Lloyd's dispute, Experian sent an Automated Consumer Dispute Verification ("ACDV") to FedLoan, requesting further information on Lloyd's accounts. In response to the ACDV, FedLoan investigated and reported back to Experian that none of Lloyd's nine student loan payments were delinquent in January or February 2018. However, FedLoan confirmed that seven of Lloyd's loan payments for June 2019 were ninety days past due. Experian communicated this update to Lloyd in a credit report dated September 24, 2019.

Lloyd filed a second dispute with Experian contesting the remaining alleged late payments. Experian sent a second ACDV to FedLoan, and FedLoan provided Experian with an update on the seven disputed loan payments. This time FedLoan reported that only one of Lloyd's student loan accounts had an overdue payment from June 2019. Experian communicated this update to Lloyd in a credit report dated October 17, 2019.

Lloyd submitted a third dispute contesting the sole remaining alleged late payment. On December 2, 2019, FedLoan received one ACDV from Experian regarding the reporting on Lloyd's student loan account. FedLoan completed another investigation and informed Experian that the remaining delinquent charge on Lloyd's account was not overdue. By February 2020, Experian removed all delinquent marks from Lloyd's credit report.

Before receiving the results of her first dispute from Experian, Lloyd initiated a civil action against FedLoan, Experian, and a handful of other CRAs. After amending her complaint, Lloyd's lawsuit alleged that FedLoan failed to properly investigate the accuracy of the information that it reported to Experian, and Experian failed to follow its procedures, or have proper procedures in place, to discover FedLoan's mistakes. Lloyd alleged both FedLoan and Experian violated 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681s-2(b).

-3-

The district court granted Experian's motion for summary judgment, determining that Lloyd could not show Experian failed to follow reasonable procedures or that Experian failed to conduct a reasonable reinvestigation. The district court initially granted FedLoan partial relief, finding that FedLoan did not willfully violate the FCRA. Further briefing ensued from both parties and the court then granted complete summary judgment in favor of FedLoan on the ground that Lloyd did not present sufficient evidence of damage to support her claim. This appeal followed.

## II.   ANALYSIS

We review a district court's grant of summary judgment *de novo*, and we may affirm summary judgment for any reason supported by the record. Gareis v. 3M Co., 9 F.4th 812, 818 (8th Cir. 2021).

### A. Claims Against Experian

Lloyd challenges on appeal the district court's dismissal of her unreasonable reinvestigation claim under § 1681i(a). In particular, Lloyd asserts Experian should have accepted her documents and should have recognized that FedLoan is an unreliable CRA.

The FCRA requires a consumer reporting agency, like Experian, to "conduct a reasonable reinvestigation" when it receives a dispute from a consumer. 15 U.S.C. § 1681i(a)(1)(A). The FCRA sets forth general requirements for consumer reporting agencies when conducting a reinvestigation: the agency must review all relevant information provided by the consumer, the agency must promptly notify the furnisher of the dispute, the agency must provide the furnisher with all relevant information, the agency must modify or delete inaccurate or unverifiable information, and the agency must notify the consumer of the results of its investigation. Id. § 1681i(a)(2)-(6). If the consumer requests a description of the

-4-

CRA's reinvestigation procedure, the CRA must provide the consumer with the description within fifteen days. Id. § 1681i(a)(7).

When filing her first consumer dispute with Experian, Lloyd submitted screenshots of her transaction history from FedLoan as of August 16, 2019, and an administrative forbearance letter from FedLoan dated August 2, 2019. Lloyd contends that these documents alone should have proved to Experian that FedLoan falsely reported delinquencies on her account and that FedLoan is an unreliable source of information. Lloyd maintains that all Experian needed to do was compare her documents with FedLoan's invoices and her dispute would have been resolved. However, Lloyd's screenshots are incomplete depictions of the status of her student loan accounts. The screenshots do not identify any payment due dates or any amounts due on specific loans. All transaction information is lumped together as applied to all of Lloyd's loans. Even so, Lloyd's screenshots show that she made no payments during January 2018, November 2018, December 2018, January 2019, February 2019, or June 2019.

More importantly, Experian did not have access to FedLoan's invoices. Upon receiving Lloyd's dispute, Experian sent an ACDV to FedLoan, requesting further information on Lloyd's accounts. Lloyd concedes that an ACDV "typically includes a description of the dispute, information about the disputed account, and any documents and comments provided by the consumer." Lloyd provided no evidence that Experian failed to follow the typical ACDV process during its reinvestigation.

Lloyd also attached an August 2, 2019, letter from FedLoan, which explained that Lloyd's loans had been placed in administrative forbearance between April 26, 2019, and July 25, 2019. Lloyd contends that she did not request this forbearance, and she made payments during March, April, May, and July of 2019. The forbearance letter stated that Lloyd was responsible for the interest that accrued during the forbearance. As this letter only addressed one of the three months at issue, the document also does not resolve her dispute.

-5-

Taken together, the screenshots and forbearance letter do not create a clear or comprehensive picture of Lloyd's student loan accounts at the time she filed her dispute. The screenshots of her transaction history lack critical information, including the amount due each month and the due date. The forbearance letter only addressed one of three missed months of payment. Contrary to her assertion, Lloyd's narrative and accompanying documents were insufficient for Experian to resolve the issues FedLoan flagged.

While Lloyd generally argues that Experian failed to follow its procedures and failed to have proper procedures in place to detect inconsistencies in a furnisher's reporting, she did not point to any step in Experian's reinvestigation procedure as insufficient. The record shows Experian followed the steps set forth by the FCRA for conducting a reinvestigation. Once it received Lloyd's first dispute, Experian reviewed Lloyd's statement describing her dispute and the documents she submitted. Experian then provided this information to FedLoan and requested further information from FedLoan through its ACDV process. When it received updated information, Experian modified its report and removed the inaccurate delinquencies. Experian promptly notified Lloyd of the results of its reinvestigation and informed Lloyd of her options if she continued to disagree with the reporting.

Although § 1681(a)(3) allows a CRA to decline to reinvestigate if it reasonably determines a consumer's dispute is "frivolous or irrelevant," Experian repeated this process when it received Lloyd's second dispute. See Federal Trade Commission, 40 Years of Experience with the Fair Credit Reporting Act, 2011 WL 3020575, at *69 ("The CRA is not required to repeat an investigation that it has previously conducted simply because the consumer reiterates a dispute about the same item of information, unless the consumer provides further information indicating that the item is inaccurate or incomplete, or alleges changed factual circumstances."). When Lloyd submitted her second dispute, she did not include any new documents or provide new narrative facts. Even so, Experian chose to

repeat its reinvestigation and once again modified its report and provided Lloyd with timely notice of the results.

Nothing in the record suggests that Lloyd requested a description of Experian's reinvestigation procedure, which a consumer may do under § 1681i(a)(7). Lloyd has failed to show that Experian did not satisfy its statutory requirements when conducting a reinvestigation under the FCRA. Each investigation was not the same, as each dispute led to the removal of one or more delinquent remarks on Lloyd's account. Likewise, Lloyd has failed to meet her burden of showing Experian willfully or negligently violated the FCRA when conducting its reinvestigation.[5]

Lloyd also argues that her screenshots and forbearance letter prove that FedLoan is an unreliable CRA and Experian had no right to rely on FedLoan's representations. However, these two documents do not establish a basis from which one could characterize FedLoan as an unreliable source of information. The Seventh Circuit in Henson v. CSC Credit Services held that a CRA "may be required, in certain circumstances, to verify the accuracy of its initial source of information," but the Henson Court conditioned that duty "on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting

---

[5]While the dissent would allow Lloyd's negligence claim to proceed under *res ipsa loquitur*, no circuit court has expressly applied the doctrine in the FCRA context. See Johnson v. Trans Union, LLC, 524 F. App'x 268, 270 (7th Cir. 2013) (including *res ipsa loquitur* in the "litany of implausible arguments" presented on appeal); Ausherman v. Bank of Am. Corp., 352 F.3d 896 (4th Cir. 2003) (expressly declining to apply *res ipsa loquitur* to prove a duty under the FCRA); Philbin v. Trans Union Corp., 101 F.3d 957 (3d Cir. 1996) (noting *res ipsa loquitor* is one theory that has been discussed by other courts but finding it unnecessary to decide among the various theories advanced by the plaintiff); Stewart v. Credit Bureau Inc., 734 F.2d 47, 51 (D.C. Cir. 1984) (while the district court hypothesized there could be an instance when inaccurate credit reports by themselves can be read as evidencing unreasonable procedures, the appellate court did not apply *res ipsa loquitur* in reviving the plaintiff's claims but instead vacated the district court's opinion due to the procedural posture and insufficient record).

agency itself knows or should know that the source is unreliable." 29 F.3d 280, 287 (7th Cir. 1994). The court did not articulate the circumstances where this duty might be triggered.

Lloyd has not identified any binding precedent supporting her contention that, under these facts, Experian should have been on notice that FedLoan is an unreliable furnisher. Lloyd does not allege any widespread inaccuracies across FedLoan's serviced accounts. Additionally, nothing in the record reflects that Experian should have suspected that FedLoan was an unreliable source. Under these facts and circumstances, Lloyd failed to present a cognizable claim against Experian.

B. Claims Against FedLoan

Lloyd contends the district court erred when it found the evidence was insufficient to show a willful violation of the FCRA by FedLoan. Lloyd asserts a reasonable jury could have found FedLoan willfully failed to correct the delinquencies on her accounts because FedLoan had "ample notice that its late payment reports were inaccurate," the inaccuracies were "a staggeringly easy problem" to resolve, and a customer service representative confirmed there was no basis for FedLoan to report any of Lloyd's payments as delinquent.

"To show willful noncompliance with the FCRA, the plaintiff must show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive." Bakker v. McKinnon, 152 F.3d 1007, 1013 (8th Cir. 1998) (cleaned up). To prove willfulness, Lloyd is required to provide some evidence showing that FedLoan knowingly, intentionally, or recklessly committed an act in conscious disregard of her rights. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57-58 (2007).

Lloyd attempted to prove willfulness by relying on statements documented in a transcript she created from a phone conversation with an unknown FedLoan customer service representative on an unknown date. Lloyd maintains that the

customer service representative confirmed that she was not past due on any of her student loan payments. However, the customer service representative noted that Lloyd missed her June payments and that the loan was accruing unpaid interest. In any event, Lloyd's transcription is not competent evidence because Lloyd cannot lay an appropriate foundation for it, as she cannot identify who was speaking on behalf of FedLoan, the authority the speaker had to make representations on behalf of FedLoan, or even when the conversation occurred. Being unable to lay the proper foundation, the transcript would not be admissible at trial and is insufficient to show FedLoan knowingly, intentionally, or recklessly failed to comply with the requirements of the FCRA.

Lloyd also contends willfulness was demonstrated because even though she provided documents showing timely payments, she was required by FedLoan to file multiple disputes to correct inaccuracies, FedLoan continued to provide at least some false information, and FedLoan's continued distribution of false information was purposeful and unreasonable. While it is undesirable that FedLoan was not more attentive to detail, Lloyd has at least nine student loans with FedLoan and FedLoan was responsive in resolving her disputes. On this record, the mere fact that Lloyd filed multiple disputes does not, in itself, show FedLoan knowingly and intentionally committed an act in conscious disregard for the rights of others.

With regard to Lloyd's reasonableness claim, § 1681s-2(b) sets forth the duties required when an entity furnishing credit report information receives a dispute. The statute requires the furnisher to:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

-9-

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

> (i) modify that item of information;
> (ii) delete that item of information; or
> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1)(A)-(E). Lloyd does not identify which of these statutory duties FedLoan failed to satisfy. Evidence in the record shows that for each of Lloyd's three disputes, FedLoan followed the steps set forth in § 1681s-2(b)(1)(A)-(E), which ultimately resulted in removing inaccurate information from Lloyd credit report each time.

Lloyd's failure to present evidence sufficient to allow a jury to find that FedLoan's investigation was unreasonable is fatal to her claim. The initial documents Lloyd submitted did not paint a full or accurate picture of her loan payment history. The screenshots of her transaction history did not detail what amounts were due or the date they were due. Finally, Lloyd did not identify a statutory duty that FedLoan failed to fulfill. As with the claims against Experian, we find the doctrine of *res ipsa loquitur* inapplicable under the facts and circumstances of this case. The district court did not err in denying Lloyd's motion for summary judgment.

Even if Lloyd had presented sufficient evidence demonstrating FedLoan acted willfully or unreasonably, Lloyd bears the burden of showing actual damages resulted from FedLoan's alleged reporting error. 15 U.S.C. § 1681o(a)(1); Peterson v. Experian Info. Sols., 44 F.4th 1124, 1126 (8th Cir. 2022). Lloyd contends she suffered actual damages in the form of credit card denials and a mortgage denial.

While denial of credit can give rise to an actual claim for damage resulting from erroneous credit reporting, see Peterson, 44 F.4th at 1126-27, the credit denial letters Lloyd submitted provided only brief, bulleted explanations as to why Lloyd's

credit card applications were denied. None identified FedLoan's student loan reporting as a factor in their denial decisions. The denial letters from Mastercard, Sears, and Home Depot provided cursory explanations, such as "[h]istory of delinquent credit obligation(s)" and "[n]umber of credit bureau inquiries." The credit denial letter from TD Bank did not provide a reason as to why it denied Lloyd's application for an account, but it did provide several reasons for Lloyd's adverse credit score: "[s]erious delinquency," "[t]ime since delinquency is too recent or unknown," "[n]umber of accounts with delinquency," and "[r]atio of balance to limit on bank revolving or other rev accts too high." Although each letter provided contact information for follow-up, nothing in the record suggests that Lloyd contacted the credit card companies for more information or specific reason(s) for the denial.

In summary, the letters Lloyd submitted are simply too vague to demonstrate actual damages. In addition, Lloyd had other history of loan delinquencies. Lloyd's suspicion that FedLoan's reporting caused her credit card denials lacks evidentiary support, and the district court did not err by dismissing her claim.[6]

Lloyd also submitted a letter denying her application for a home loan from a mortgage originator at Mutual of Omaha. Evidence in the record shows that Lloyd and her husband applied jointly for a loan with the same originator twice, once in 2018 and then again in 2019. Lloyd's first application in 2018 occurred before FedLoan reported any delinquencies on her student loans and the reason preapproval was not obtained was due to Lloyd's credit history.

Following the 2019 application, the mortgage originator noted that Lloyd's credit report included additional derogatory marks in addition to her student loan delinquencies. The mortgage originator was also concerned about Lloyd's income

---

[6]We are unpersuaded by the dissent's reliance on Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016), as support for the position that the credit denial letters constitute sufficient evidence of damage because the focus in Spokeo was on standing, which is not at issue in this case.

and needed additional information from Lloyd. Rather than provide the requested information, Lloyd followed up with a request for the originator to write a letter stating Lloyd was denied a mortgage due to the information in her credit report. The record does not support Lloyd's assertion that FedLoan's reporting, and not other issues a mortgage originator considers, led to the loan denial. Because Lloyd failed to provide sufficient evidence to raise a jury question that she sustained actual damages from FedLoan's reporting, her claim fails.

Lastly, Lloyd asserts that the district court impermissibly excluded her expert rebuttal report and credit impact evidence. Because the credit score impact analysis was contained within the rebuttal report, we address them together. We review a district court's decision to exclude expert evidence for an abuse of discretion. Kuhn v. Wyeth, Inc., 686 F.3d 618, 624 (8th Cir. 2012).

The district court excluded the report because it was untimely and should have been presented as an affirmative report. The district court noted that the information in the report should have been presented in an affirmative expert report. Instead of doing so, Lloyd waited until FedLoan's expert pointed out all the flaws in her case to retain a rebuttal expert in an attempt to salvage her case. The district court twice emphasized that Lloyd is an attorney and that Lloyd should have known she had to designate an expert for her case-in-chief and file the report in accordance with the court's scheduling order.

Despite carrying the burden of proof on the issues presented in her report, Lloyd argues that she does not have to present the testimony in her case-in-chief if the testimony would also be proper in rebuttal under United States v. Luschen, 614 F.2d 1164, 1170 (8th Cir. 1980). In Luschen, the trial court allowed the government to reopen its rebuttal and provide testimony that it could have provided during its case-in-chief. Id. The Court concluded that the district court did not abuse its discretion in doing so because "[t]he fact that testimony would have been more proper for the case-in-chief does not preclude the testimony if it is proper both in the case-in-chief and in the rebuttal." Id.

-12-

The admissibility of evidence is entrusted to the sound discretion of the trial court. It is indisputable that Lloyd failed to comply with the expert opinion deadline. Unlike in Luschen, this case failed at the summary judgment stage. While Lloyd contends that exclusion was too harsh a sanction for her untimely report, a district court may exclude evidence as a self-executing sanction unless the party's failure to comply is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). When imposing a sanction, a district court should consider "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." Wegener v. Johnson, 527 F.3d 687, 692 (8th Cir. 2008). While the district court's discretion narrows as the severity of the sanction increases, id., here the district court considered most of these factors when it excluded the report.

Notably, the district court did not find Lloyd's reason for failing to timely file her report persuasive. Even though the district court did not make an express finding of surprise or prejudice, the court noted that Lloyd "waited until the flaws in her case were elucidated by Defendant FLS's expert, and only then found an expert who could testify in rebuttal." Similar to the defendant in Wegener, FedLoan may not have been surprised at the arguments presented in Lloyd's report, but it may have been surprised by the untimely disclosure.

The district court also found that Lloyd's late disclosure significantly disrupted the case. The court emphasized that Lloyd's need for additional time occurred only "after discovery ha[d] long been closed." Lloyd was on notice that the court was concerned about discovery delays. In its second amended scheduling order, the district court informed the parties that "[a]ny last minute discovery submitted too late for the opposing side to timely discover may be stricken" and "the Court expects discovery to proceed in a timely manner." Further, as the deadlines drew near, the district court issued an order cautioning the parties "that if they wish the Court to extend the discovery deadline, they must file a motion for extension of time demonstrating good cause for the extension sought." Despite the district court's

clear expectations and repeated warnings, Lloyd did not file a motion or request leave to file supplemental discovery until more than a year after the close of discovery.

Because Lloyd's failure to comply with the district court's orders was not substantially justified or harmless, the district court did not abuse its discretion in excluding Lloyd's expert's rebuttal report.

## III.   CONCLUSION

For the foregoing reasons, we affirm the dismissal of Lloyd's claims.

SMITH, Chief Judge, concurring in part and dissenting in part.

For the reasons given in the majority opinion, I agree with the disposition of the willfulness and evidentiary issues. However, I would reverse the district court's grant of summary judgment with respect to the negligence claims. In my opinion, a reasonable jury could find negligence and award damages.

In 2019, Chiya Lloyd and her husband sought to become homebuyers.[7] Like most prospective homebuyers, they lacked sufficient cash to buy a home outright. Instead, they would need to obtain a loan, relying on their creditworthiness.

Over the summer, Lloyd monitored her credit reports, as she and her husband prepared to apply in the fall. Errors began to appear in August. Lloyd's student loan servicer, FedLoan, was falsely reporting to the nation's three major credit bureaus—Experian, Equifax, and TransUnion—that Lloyd was delinquent on her student loan payments. Most relevant here, FedLoan reported that Lloyd was 90 days delinquent on her bill for June 26, 2019—a factual impossibility in August.

---

[7]At summary judgment, a court views the facts in the light most favorable to Lloyd. *Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 825 (8th Cir. 2013).

Lloyd disputed the reports with the credit bureaus, confident they would remove the error from their files. Following their standard investigation procedures, the credit bureaus submitted Automated Consumer Dispute Verifications (ACDVs) to FedLoan around August 24. These ACDVs requested information on the status of Lloyd's account. FedLoan conducted an internal investigation, answered the ACDVs, and reiterated that, as of August 24, Lloyd was 90 days delinquent on her June 26 bill. The credit bureaus accepted this finding and did not amend their files regarding the June 26 bill. In September, October, and December, Lloyd repeated the process, and the results were the same. She was told that, as of August, she had been 90 days delinquent on her June 26 bill.

Hopeful that lenders would disregard the falsely reported 90-day delinquency, Lloyd and her husband pressed forward. Around this time, Lloyd applied for four credit cards. All four applications were rejected. The Sears Card cited "[h]istory of delinquent credit obligation(s)" on Lloyd's Experian credit report. R. Doc. 138-14, at 1. The Shop Your Way Mastercard used identical language. *Id.* at 2. The Home Depot Consumer Credit Card cited "[n]umber of credit bureau inquiries" at Experian. *Id.* at 3. And TD Bank cited Experian's report as showing "[s]erious delinquency," "[t]ime since delinquency is too recent or unknown," "[n]umber of accounts with delinquency," and "[r]atio of balance to limit on bank revolving or other rev accts [revolving accounts] too high." R. Doc. 150-10, at 1.

In September, Lloyd and her husband went to Mutual of Omaha Mortgage, seeking prequalification for a home loan. A branch manager pulled the couple's credit reports, investigated their creditworthiness, and determined that they were ineligible for a home loan. On October 1, the manager sent a letter:

Dear Chiya and Clarence Lloyd:

I have reviewed your application. At this time, we cannot offer you a home loan based on reported lates on your credit report:

- Experian, Transunion and Equifax reported student loan late payments for +90 days. This was a credit report from 9/9/2019.

- Experian reported +90 day lates on your student loans as recent as 6/2019. This was a credit report from 9/27/2019.

- Also, student loans will need to be calculated into your monthly liabilities. I have attached the options for Conventional and FHA loan options for your review.

R. Doc. 136-11, at 2.

Pursuant to the Fair Credit Reporting Act (FCRA), Lloyd brought willfulness and negligence claims against FedLoan, Experian, Equifax, and TransUnion. Soon thereafter, Equifax and TransUnion removed the 90-day delinquency from their files, and Lloyd voluntarily dismissed them from the case. FedLoan and Experian persisted in their error and insisted that Lloyd had been 90 days delinquent on her June 2019 bill. They did not correct their files until February 2020.

***

Access to credit is vital to a person's participation in our nation's economic opportunities. Credit reports often play a substantial role in assessing a person's creditworthiness. As the Supreme Court recently explained, "[a] credit report can determine everything from whether a person can secure a credit card, purchase a home, win a new job, or start a small business. Recognizing the importance of accuracy in credit reporting, Congress adopted the Fair Credit Reporting Act in 1970 (FCRA)." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 45 (2024). The FCRA imposes a duty not to "willfully or negligently supply false information" about consumers' creditworthiness. *Id.* To enforce this duty, Congress has "authorized consumer suits against any person who willfully or negligently fails to comply with any of the law's requirements." *Id.* at 47 (cleaned up).

A negligence claim under the FCRA resembles a traditional negligence claim. A plaintiff must prove four elements: "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer

-16-

suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Bibbs v. Trans Union LLC*, 43 F.4th 331, 342 (3d Cir. 2022) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 708 (3d Cir. 2010)). "[A]t the summary judgment stage[,] the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if a nonmovant "present[s] more than a scintilla of evidence" and "advance[s] specific facts" supporting each element of her claim. *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 64 F.3d 1202, 1211 (8th Cir. 1995).

On the first element, Lloyd's allegations are indisputably correct. When FedLoan told Experian and when Experian told prospective lenders that Lloyd was 90 days delinquent on her June 26 bill as of August 24, they reported inaccurate information that was factually impossible. A person cannot be 90 days delinquent on a bill that was due two months prior.

On the second element, the majority opinion faults Lloyd, in her negligence claim against Experian, because she "provide[s] no evidence that Experian failed to follow the typical ACDV process," and she "d[oes] not point to any step in Experian's reinvestigation procedure as insufficient." As for the negligence claim against FedLoan, the majority declares: "FedLoan followed the steps set forth in [the statute], which ultimately resulted in removing inaccurate information from Lloyd['s] credit report each time." The opinion continues: "Lloyd's failure to present evidence sufficient to allow a jury to find that FedLoan's investigation was unreasonable is fatal to her claim."

I disagree with these "no evidence" findings. Concededly, Lloyd provides no *direct* evidence about what went wrong at FedLoan and Experian. But the record contains sufficient *circumstantial* evidence on which a reasonable jury could find for Lloyd. A reasonable jury could infer that FedLoan and Experian "fail[ed] to follow reasonable procedures to assure maximum possible accuracy." *Bibbs*, 43 F.4th at 342. Of course, Lloyd's strongest circumstantial evidence is the timeline.

-17-

At least two of our sister circuits have suggested that, if an appropriate case ever arises, a consumer may be able to prove a negligence claim under the FCRA using the doctrine of *res ipsa loquitur*—the thing speaks for itself. *See Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 901–02 (4th Cir. 2003); *Philbin v. Trans Union Corp.*, 101 F.3d 957, 965–66 (3d Cir. 1996). Our circuit describes *res ipsa loquitur* as "a type of circumstantial evidence, which permits, but does not compel, an inference of negligence upon showing an injury would not have occurred absent some unspecified but impliedly negligent act." *Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, 1096 (8th Cir. 2007) (internal quotation marks omitted). The doctrine has several variations. *See* Restatement (Third) of Torts: Phys. & Emot. Harm § 17 cmt. b (Am. L. Inst. 2010) (discussing alternative formulations).

According to the Supreme Court, the FCRA should be construed in light of "common law usage." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). Under the common law, *res ipsa loquitur* is a well-established doctrine, enabling a plaintiff to prove negligence without direct evidence about the exact cause of her injury. In non-FCRA contexts, the doctrine has been widely used in our circuit. Following the views of our sister circuits and the view of the Supreme Court in *Safeco*, I would allow Lloyd to proceed on her *res ipsa loquitur* argument. *See* Appellant's Br. at 31. "[I]n certain instances," as here, "inaccurate credit reports by themselves can fairly be read as evidencing unreasonable procedures." *Philbin*, 101 F.3d at 966 (quoting *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 52 (D.C. Cir. 1984)).

*Res ipsa loquitur* may or may not be a winning argument at trial, but I believe a reasonable jury could permissibly infer that no set of investigation procedures, which allows factually impossible information to remain in a consumer's credit file, reasonably "assure[s] maximum possible accuracy." *Bibbs*, 43 F.4th at 342. Upon the completion of their investigations, FedLoan and Experian confirmed that Lloyd had indeed been 90 days delinquent on her June 26 bill as of August 24. From this

fact, a reasonable jury could conclude that the investigations were unreasonable. Merely counting the days on the calendar would have sufficed.[8]

On the third and fourth elements, which pertain to damages and causation, the majority opinion properly holds that "denial of credit can give rise to an actual claim for damage resulting from erroneous credit reporting." Here, Lloyd suffered denials of four credit card applications and prequalification for a home loan. The majority faults Lloyd for not doing a "follow-up" with the credit card companies after their denials. However, the FCRA does not contain a "follow-up" requirement. Next, the majority faults Lloyd for being "too vague" about her damages and for having "additional derogatory marks" in her credit history. These observations, in my opinion, go more to the weight of the evidence than its legal sufficiency.[9] "[T]he law has long permitted recovery by certain tort victims even if their harms may be

---

[8]In my view, it is immaterial whether the defendants did or did not "follow the typical ACDV process." If they did not follow the typical process, their liability is clear. If they followed the typical process, but the typical process is so defective that it allows factually impossible information to remain in consumers' credit files, a jury could permissibly infer that the typical process is unreasonable and violates the FCRA. *See* 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), 1681s-2(b)(1). Both paths lead to liability. *Res ipsa loquitur* relieves the plaintiff of her burden to discover specifically what happened. *See Depositors*, 506 F.3d at 1096.

[9]*See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in h[er] favor."); *Wilson v. Myers*, 823 F.2d 253, 256 (8th Cir. 1987) ("Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact. The trial court errs when it takes upon itself, in deciding a summary judgment motion, to weigh conflicting evidence and to resolve the issue based on the evidence." (citation omitted)); *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996) ("If reasonable minds could differ as to the import of the evidence, summary judgment is inappropriate." (internal quotation marks omitted)).

difficult to prove or measure." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (interpreting the FCRA).

Importantly, the FCRA does not require but-for causation. A plaintiff merely needs to show that false information in her credit report was a "substantial factor" in causing her injury. *Philbin*, 101 F.3d at 968. On this record, a reasonable jury could find that a false report of a 90-day delinquency on a very recent student loan bill substantially contributed to the credit card companies' and Mutual of Omaha's denials of credit. Even though damages may be difficult to measure in this case, *see Spokeo*, 578 U.S. at 341, I believe the record contains sufficient evidence for a jury to decide what Lloyd may be owed, *see* 15 U.S.C. § 1681o(a); *see also Peterson v. Experian Info. Sols.*, 44 F.4th 1124, 1127 (8th Cir. 2022) (commenting that a consumer suffers actual damages when she "is refused credit altogether" (quoting *Smith v. Santander Consumer USA, Inc.*, 703 F.3d 316, 317 (5th Cir. 2012) (per curiam))). I would reverse the district court on both negligence claims.

Today's decision undermines Congress's goal of ensuring an accurate credit reporting system—one that is fair to consumers and useful to lenders. *See Kirtz*, 601 U.S. at 45. Today's decision also conflicts with the Supreme Court's views of the FCRA in *Safeco* and *Spokeo*, and it appears to create a split between our circuit and at least some of our sister circuits. On the willfulness and evidentiary issues, I join the court's opinion. On the negligence claims, I respectfully dissent.

————————————————————